IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| STERLING R. RIVERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:12-cv-561 |
| | ) | |
| BRETT W. SHIELDS, | ) | Judge Trauger |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Sterling Rivers, a detainee held at the Davidson County Sheriff'S Office--Criminal Justice Center ("CJC"), has filed a *pro se* complaint (ECF No. 1) against defendant Brett W. Shields, asserting claims under 42 U.S.C. § 1983. The complaint is before the court for initial review pursuant to 28 U.S.C. §§ 1915(b)(2) and 1915A(a).

## I.    Allegations in the Complaint

The factual allegations in the present complaint are *verbatim* identical to the factual allegations contained in the complaint filed under Case No. 3:12-cv-562, *Sterling R. Rivers v. Jeffrey Scott and Lebanon Police Department*, filed the same day as the complaint in this action and also before the undersigned. The summary of facts set forth herein is borrowed in large part from the summary set forth in the memorandum conducting the initial review of that complaint.

The plaintiff alleges that on or about April 5, 2011, he" recorded" a 3rd District County Commissioner buying narcotics, apparently using his cell phone. (ECF No. 1, at 7.) He presented the recording to his lawyer, who allegedly called the FBI, with the plaintiff's permission. The plaintiff anticipated that the FBI would call him to request his assistance in pursuing criminal charges against the county commissioner, but the FBI has never contacted him.

On June 5, 2011, the plaintiff was the passenger in a vehicle that was pulled over on Sparta Parkway in Lebanon, Tennessee. David Valentine was driving the vehicle, but he was apparently not the owner. The car was pulled over by Jeffrey Scott, a police officer with the Lebanon Police Department. Scott was driving an ordinary black and white police car. The plaintiff claims, however, that he saw an undercover agent, later

ascertained to be defendant "S.A." Brett Shields, in an unmarked car behind the black and white police car.

Valentine produced a valid driver's license, registration and proof of insurance. Officer Scott went back to his vehicle. When Officer Scott returned to the car in which Valentine and plaintiff were waiting, he asked if he could search it. The plaintiff asked why they had been pulled over and was told it was because the window tinting was too dark. The plaintiff told Officer Scott that he did not have permission to search the car, because having tinted windows did not provide a valid reason for doing so. The plaintiff states that after he stated, "no," "the next thing I know, bag up came with a '223' rifle. The officer with the rifle stood behind our vehicle." (ECF No. 1, at 8.)

The plaintiff had with him two cell phones: one did not have a battery in it but contained the original recording of the county commissioner buying drugs. The other phone, the one the plaintiff regularly used, also had a copy of the recording on it. When Officer Scott began yelling at the occupants of the vehicle to "get out of the car," the plaintiff was suddenly sure that the reason the car was pulled over was in order for the officers to obtain these recordings from him. (*Id.*) He claims he had been told by his lawyer that he should make more copies of the recording, and that "if they knew [the plaintiff] kept the only recording there is, . . . they would probably crush it and crush you [plaintiff]." (ECF No. 1, at 9.)

The plaintiff was scared at this point so he got out of the car. The officers on the scene immediately took his phones from him. The officers then searched the car and found concealed weapons in the trunk and console. The plaintiff does not state whether defendant Shields ever exited from his unmarked vehicle, or whether he took part in the search or seizure. The plaintiff does not allege that he ever spoke or interacted with Shields. He simply states that he later learned that the person in the unmarked car behind Officer Scott's police vehicle was Brett Shields.

In any event, the plaintiff and Valentine were both arrested and taken to jail. The plaintiff posted a $200 bond and was released, but the police department refused to give the plaintiff or his lawyer the plaintiff's cell phones. The plaintiff states that the car's tinted windows were a pretext for pulling over the vehicle. He asserts that the owner of the vehicle told him that he had had the car for a few years but had never been pulled over for tinted windows. The plaintiff also alleges that the police officer who pulled them over never did a "tint tester" on the windows. (ECF No. 1, at 10.) The plaintiff further states he was never informed on what charges he was arrested and that, although the arresting officer reported that he "smelled smoke," this

was a lie and the officers who searched the vehicle never found any drugs. (*Id.*)

According to the plaintiff, the FBI never called back for more information about the county commissioner so the plaintiff "knew most definitely what was going on." (ECF No. 1, at 10.) Three months later the plaintiff was indicted. The plaintiff does not identify on what charges, or whether it was a state or federal indictment, but he claims the FBI "did not even put the event that took place on 6-5-11" on the indictment "because it would [have] exposed their illegal actions." (ECF No. 1, at 5.) Thereafter, the FBI "kicked doors in," looking for the plaintiff, saying "if he run shoot to kill." (*Id.*) The plaintiff was not at the house where the doors were kicked in, but after he was told about the "shoot to kill" comment, he chose to go to Paris, Texas "so that [he] could be captured by agents that w[ere] less likely to kill [him] during [his] arrest." (*Id.*) He was in fact caught and arrested, without incident, presumably in Texas. The plaintiff does not allege that defendant Shields had any involvement in the search for him.

The plaintiff states the indictment includes dismissed charges from the past. The plaintiff claims that he is "pretty sure" "upon information . . . and my belief" that "Chris Wharton told the FBI agent(s) that was paying him to set people up, that I had the recording of the 3rd District Commissioner. . . . I'm positive that Chris Wharton knew about it, (the recording) because I told him, and let him hear it myself. Chris the inform[a]nt, completely entrapped me with duress, which was the fear that he installed into my heart and mind due to him beating me up in the past, for not buying drugs for him. The fear also came from him being a high rank gang member that will kill if he is dishonored." (ECF No. 1, at 11.)

Based on these allegations, the plaintiff asserts that

Defendant S.A. Brett Shields showed official misconduct by intentionally and illegally conspiring with Chris Wharton and officer Jeffrey Scott to make an illegal stop, search and seizure, and m[a]licious arrest, all in the attempt to cause Plaintiff Rivers the cruel and unusual punishment of unnecessary and wanton infliction of pain due to fear, Emotional Distress, Mental Anguish, pain, and suffering. The 4th Amendment forbids the government from conducting 'unreasonable' searches and seizures. Thereof a police officer nor FBI agent can come into nor search and seizure anything in places where Plaintiff Rivers have a 'reasonable expectation' of privacy, which includes your person. . . . S.A. Brett Shields also violated the equal protection of the law clause that the 14th Amendment of the Constitution guarantees. Thereof said actions constitute a violation of the 4th, 8th, and 14th Amendments of the constitution. At all times the Defendant acted under color of federal law.

(ECF No. 1, at 7.)

## II.    Standard of Review

Although *pro se* pleadings are to be liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365

(1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e)(2), *sua sponte*, without prior notice to the plaintiff or service of process on the defendant, if the complaint fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *McGore v. Wrigglesworth*, 114 F.3d 601, 608–09 (6th Cir.1997), *overruled on other grounds by Jones v. Bock*,549 U.S. 199 (2007). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327.

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Further, the factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff is not required to include detailed factual allegations, but he must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662,678 (2009) (citing *Twombly*, 550 U.S. at 555). A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In reviewing a complaint, the court must construe the pleading in the light most favorable to the plaintiff. *Bishop v. Lucent Techs., Inc.,* 520 F.3d 516, 519 (6th Cir. 2008).

### III. Law and Analysis

The plaintiff alleges that defendant Shields is an F.B.I. agent and that he was acting under color of federal law. The court therefore construes the complaint as attempting to state a *Bivens* action, named after *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 389 (1971), in which the Supreme Court held that a federal employee's violation of the plaintiff's constitutional rights gave rise to a cause of action for damages against that employee. *See also Yeager v. Gen. Motors Corp.*, 265 F.3d 389, 398 (6th Cir. 2001) (defining a *Bivens* action as a "judicially created damages remedy designed to vindicate violations of constitutional rights by federal actors"). A *Bivens* action is "the federal analog to suits brought against state officials under . . . 42 U.S.C. § 1983." *Hartman v. Moore*, 547 U.S. 250, 255 n.2 (2006).

To state a claim under § 1983, a plaintiff must "identify a right secured by the United States Constitution and deprivation of that right by a person acting under color of state law." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992); *West v. Atkins*, 487 U.S. 42, 48 (1988). Thus, to state a

*Bivens* action, the plaintiff must allege the violation of a federal right by a person acting under federal law.

In the related action, *Rivers v. Scott*, Case No. 3:12-cv-561, this court found that the plaintiff adequately alleged a Fourth Amendment claim against Jeffery Scott, a defendant in that action. With respect to the claims against Agent Shields, the plaintiff asserts that Shields conspired with Scott to violate his Fourth Amendment rights. The only factual allegations the plaintiff offers in support of his claim of a conspiracy are (1) the plaintiff had a recording that incriminated a county commissioner, and he had notified the F.B.I. about that recording; (2) the plaintiff believes he is being targeted by the F.B.I. and others because of his possession of that recording; and (3) the plaintiff believes that Agent Shields was on the scene when the vehicle in which the plaintiff was riding was pulled over by Officer Scott. The plaintiff does not allege, however, that Agent Shields actually participated in the stop, the search, or the arrest, nor does he allege that Agent Shields had any subsequent involvement in the search for the plaintiff after he had been released from jail but then indicted on other charges.

The court finds that the plaintiff's claims against Agent Shields are bolstered by nothing more than sheer speculation and conclusory statements regarding the existence of a conspiracy. Other than his purported presence in an unmarked car at the time of the plaintiff's arrest on June 5, 2011, the plaintiff cannot point to any overt act by Agent Shields that would support the claim that Shields was involved in a wide-scale conspiracy to obtain from the plaintiff the recordings of the county commissioner's drug buy, or even that he was involved in the allegedly illegal search and seizure. The Supreme Court has held that for a complaint to state a claim for relief, the factual allegations therein must be sufficient to raise the right to relief above the "speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* Under this standard, the allegations in the present complaint are not sufficient to raise the right to relief against Agent Shields above the speculative level.

## IV.    Conclusion

For the reasons set forth herein, the court finds that the complaint fails to state a claim against defendant Brett Shields upon which relief may be granted. The complaint will therefore be dismissed. An appropriate order will enter.

_____

Aleta A. Trauger
United States District Judge